UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

AARON  DIAS,
    Individually and on behalf of others similarly situated,
LESLIE DIAS,
    Individually,

    Plaintiffs,

 -vs-                             Case No.
                                     Hon.

CREDIT PROTECTION
ASSOCIATION, L.P.,

    Defendant.

## CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiff Aaron brings this action as an individual and on behalf of others similarly situated, against Credit Protection Association, L.P., for violations of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  In violation of the Act's requirement that a collector meaningfully identify itself, Defendant used the acronym "CPA" in its communications rather than its true name. He also brings individual claims under the FDCPA and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.* (alternatively the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.* ) for Defendant's repeated, continuous and harassing collection calls to him; and together, Leslie and Aaron Dias bring individual claims for unlawful unconsented cell phone calls using automated dialers and prerecorded messages.

## Jurisdiction and Venue

1.      This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d), TCPA, 47 U.S.C. § 227, and 28 U.S.C. §§1331,1337.

2.      This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

3.      The transactions and occurrences which give rise to this action occurred in Kent County, Michigan.

4.      Venue is proper in the Western  District of Michigan.

**Parties**

5.      The Plaintiffs to this lawsuit are:

   a.      Aaron  Dias, a natural person and resident of Kent County, Michigan.

   b.      Leslie Dias, a natural person and residence in St. Claire County, Michigan.

6.      The Defendant is Credit Protection Association, L.P., which is a Texas Limited Partnership, doing business in Michigan.

7.      Defendant acts  as a  debt collector as defined by 15 U.S.C. § 1692a of the FDCPA and as debt collector a within the meaning of MOC; alternatively a creditor within the meaning of the MCPA.

**Preliminary Statement Concerning The FDCPA**

8.      The purpose of the FDCPA is to protect consumers by "eliminat[ing] abusive debt collection practices by debt collectors.  *Stratton v Portfolio Recovery Associates, LLC,* 770 F.3d 443, 445 (6th Cir. 2014).

9.      The FDCPA protects both consumers and honest and ethical debt collectors who might otherwise be impelled to adopt their competitors' more profitable bad practices to avoid being "completely disadvantaged." 15 U.S.C. § 1692(e).  *Stratton* at 449.

10.      The FDCPA requires that a debt collector provide "meaningful disclosure of the caller's

2

identity." 15 U.S.C. § 1692(d)(6). *Kane v NAFS, Inc.*, 2011 WL 6018403 *5 (E.D. Mich. 2011).

11. The FDCPA also prohibits a collector from causing a telephone to ring repeatedly or continuously with the intent to annoy, abuse or harass. 15 U.S.C. § 1692(d)(6).

**Preliminary Statement Concerning Michigan Collection Law**

12. The State of Michigan governs collection conduct through parallel acts that govern the conduct of debt collectors, the MOC, M.C.L. § 339.901 *et seq.*, and creditors, the MCPA, M.C.L. § 445.251 *et seq.*

13. Both the MOC and MCPA prohibit harassing collection conduct, including causing a telephone to ring repeatedly and continuously. M.C.L. § 339.915(n); M.C.L. § 445.252(n).

**Preliminary Statement Concerning The TCPA**

14. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, –U.S.-- 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

16. Dead air calls are the mark of predictive dialers. As stated by the FCC, "The record before us revealed that consumers often face "dead air" calls and repeated hang-ups resulting from

the use of predictive dialers."   Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 Fed. Reg. 19330, 19334  (April 13, 2005).

17.     Predictive dialers used for collection calls are ATDS when it is "equipment paired with predictive dialing software and a database of numbers.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling* CG Docket No. 02-278, 23 FCC Rccd 559, 565-566 (Dec. 28, 2007) released January 4, 2008.  Also *see Griffith v Consumer Portfolio Serv. Inc.*,   2011 WL 360912 (N.D. Ill. 2011)("Automatic telephone dialing system" ("ATDS") means any equipment that has the capacity to dial numbers without human intervention").

### General Allegations

18.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by 15 U.S.C. §1692(a)(4).

19.      Defendant is a debt collector that specializes in cable and utility collections.  As stated on its website, "Since 1977, Credit Protection Association has specialized in bad debt and recovery management solutions, with customers that include some of the nation's largest cable providers and utility companies." http://www.creditprotect.com/about/ (downloaded May 29, 2015).  It further advertises that "the company pioneered the idea of high-volume, low balance collections..." *Id*.

20.     Part of Defendant's strategy for increasing the volume of its debt collection calls involves the use of an automatic telephone dialing system ("ATDS") and automated and/or prerecorded messages.

4

21.   Defendant uses ATDS equipment and software that has the capacity to store or produce telephone numbers to be called and which includes auto-dialers and predictive dialers.

22.   Plaintiffs Leslie and Aaron Dias, mother and son, maintain cell phones through a single carrier, each having a separate line on a shared usage plan.

23.   Leslie Dias is identified as the subscriber of the cell phone plan.

24.   Aaron Dias is identified as the authorized user of the cellular phone assigned (810) 841-XXXX.

25.   Aason Dias maintains custody and control over the cellular phone assigned (810) 841-XXXX.  He is the customary user  and carrier of this cellular phone number.

26.   Mr.  Dias was the called party and recipient of Defendant's calls.

27.   Starting in late 2014,  Defendant initiated a campaign of phone calls to Mr. Dias on his cell phone.

28.   Defendant placed these calls in order to collect a debt.

29.   Defendant's campaign went on through 2015, and in this period, it placed more than 45 calls to Mr. Dias.  It repeatedly and continuously called Mr. Dias,  calling on back to back days and by calling more than one time a day on at least twelve days and on many days calling up to three times.

30.   Defendant placed the November 2014 calls from the following number which was displayed on Mr. Dias' cell phone caller identification system: (888) 745-3139.

31.   Mr. Dias did not provide prior express consent to receive prerecorded telephone calls or calls using an ATDS on his cellular telephone.

32.    Mrs. Dias did not provide prior express consent to receive prerecorded telephone calls or

calls using an ATDS as to Mr. Dias' cellular telephone.

33.   In February and March 2015,  Defendant called variously from the following numbers which
were displayed on Mr. Dias' cell phone caller identification system: (844) 335-5701, (844)
335-5702, (844) 681-2008 and (844) 681-2009.

34.   In two calls from Defendant in March 2015, Mr. Dias answered his cell phone and was met
with a long period of silence followed by three beep tones.

35.   In each call, he waited a long time and no person came on the line.

36.   These dead air calls evidence that Defendant used an ATDS in the placement of calls to Mr.
Dias.

37.   In February and March, Defendant conveyed at least15  prerecorded messages to Mr. Dias.

38.   Each of these calls consisted of the identical message as follows:

"Hello this is CPA calling regarding an important business matter for Donald XXXX.  If this
is Donald XXXXX, please press 1 now. To place this call on hold to allow time for Donald
XXXXX time to come to the phone, please press 2. If this is the correct household but
Donald XXXXX is not available, please press 3. If Donald XXXXX does not live at this
address, please press 4."

39.   This is the entirety of the message conveyed by Defendant.

40.   Defendant conveyed the messages to Mr. Dias using a combination of (a) a uniform
prerecorded message and (b) text-to-speech computer software that customizes each message
with an artificial voice statement of each debtor's name.

41.   Thus, the statement of the name "Donald XXXXX" is in a robotic sounding voice
evidencing that it was generated by Defendant's  text-to-speech software.  The remainder

of the message is a uniform prerecorded message.

42. This system allows Defendant to customize its message with the debtor's name while otherwise conveying a uniform prerecorded message.

43. Defendant used this system to convey the same prerecorded message (except the named person) it conveyed to Mr. Dias, to thousands of people in Michigan and the United States.

44. The acronym "CPA" had no meaning for Mr. Dias as a way of identifying Defendant as Credit Protection Association, Inc.

45. Mr. Dias' Google search of the term "CPA" results in numerous entries for certified public accountants but in the first two results pages, did not result in any entries for Credit Protection Association

46. The acronym "CPA" would have no meaning for other consumers, including the "least sophisticated consumer," as a way of identifying Defendant Credit Protection Association, LP, as the calling entity.

47. Defendant repeatedly communicated to Mr. Dias without properly disclosing its identity.

48. Defendant intends to continue to convey the same or message to persons in Michigan and the United States, that identifies itself as "CPA" rather than by its true name.

49. Accordingly, an injunction is necessary to prevent Defendant from continuing to violate the provision of the FDCPA designed to ensure debt collectors identify themselves by their true name.

50. As a result of the acts alleged above, class members have suffered damages.

51. As a result of the acts alleged above, Plaintiff Aaron Dias has suffered damages, including emotional distress, frustration, anger and other damages resulting from the acts alleged

7

above, including but not limited to, Defendant's placement of repeated and persistent cell phone calls that failed to provide proper identification and that disrupted his life and invaded his peace and privacy.

52. As a result of the acts alleged above, Plaintiff Leslie Dias as the cell phone subscriber has suffered damages.

### Class Definition and Class Issues

53. Aaron Dias brings this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

> FDCPA Class: All persons in the United States to whom: (a) Defendant and/or a third party acting on Defendant's behalf, placed one or more telephone calls in which it identified itself solely as "CPA" (b) at any time in the period that begins one year prior to the filing of this Complaint to certification.

> Excluded from class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

54. There are questions of law and fact which are common to all members of the class, which questions predominate over any question affecting only individual class members.

55. The principal common issues are:

    a.   Whether Defendant placed collection calls in which it identified itself solely using the acronym as "CPA;"

    b.   Whether Defendant's identification of itself solely as "CPA" constitutes meaningful

8

disclosure of its identity.

56. Aaron Dias' claim is typical of the claims of the class members for the class claims he has asserted. All are based on the same legal and remedial theories.

57. Aaron Dias will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to claims stated herein. He is similarly situated with, and has suffered similar injuries as, the members of the class he seeks to represent.

58. Aaron Dias has retained counsel experienced in handling class action suits involving unfair business practices and consumer law. Neither the named plaintiff nor his counsel have any interest which might cause him not to vigorously pursue this action.

59. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

60. The class is so numerous as to make it impracticable to join all members of the class as plaintiffs. Based upon the investigation of counsel, the number of class members is estimated to be in excess of 100 persons.

## COUNT I – Fair Debt Collection Practices Act- - Class Claim

61. Plaintiffs incorporates the preceding allegations by reference.

62. Defendant's prerecorded message to Mr. Dias and class members failed to provide meaningful disclosure of its identification, in violation of the FDCPA, 15 U.S.C. § 1692d(5).

63. Mr. Dias is entitled to actual damages and any additional statutory damages, up to $1,000, as the court may allow. 15 U.S.C. § 1692k(a)(1) and (2)(A).

64. Class members are entitled to statutory damages for these violations of the FDCPA, as set

forth in 15 U.S.C. § 1692k(a)(2)(B).

65.    In order to ensure that Defendant meaningfully identifies itself, Plaintiff and class members seek injunctive relief prohibiting Defendant from making collection calls unless it identifies itself by its true name, Credit Protection Associates, L.P.

### COUNT II – Fair Debt Collection Practices Act - Individual Claim

66.    Mr. Dias incorporates the preceding allegations by reference.

67.    Defendant caused Mr.Dias's telephone to ring or engaged Mr. Dias in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass him, in violation of 15 U.S.C. § 1692d(5).

68.    Mr. Dias is entitled to actual damages and any additional statutory damages, up to $1,000, as the court may allow for these violations of the FDCPA. 15 U.S.C. § 1692k(a)(1)

### COUNT III – Michigan Occupational Code - Individual Claim
### (as alternative to claims under the Michigan Collection Practices Act)

69.    Mr. Dias incorporates the preceding allegations by reference.

70.    Defendant is a "collection agency" as that term is defined in the MOC, M.C.L. § 339.901(b).

71.    Defendant's call to Mr. Dias was in connection to collection of a debt.

72.    Defendant caused Mr. Dias' phone to ring repeatedly and continuously in violation of M.C.L. § 339.915(n).

73.    Defendant failed to implement procedures to prevent its employees from violating the MOC, in violation of M.C.L. § 339.915(q).

74.    Mr. Dias is entitled to actual or statutory damages, whichever is greater, as a result of Defendant's violations of the MOC. M.C.L. § 339.916(1).

75.    Mr. Dias is entitled to treble damages for Defendant's willful violations of the MOC.

M.C.L. § 339.916(2).

### COUNT IV – Michigan Collection Practices Act -Individual Claim (as alternative to claims under the Michigan Occupational Code)

76. Plaintiff incorporates the preceding allegations by reference.

77. Defendant is a "regulated person" under the MCPA, M.C.L. § 445.251(g)(xi).

78. Defendant's call to Mr. Dias was in connection to collection of a debt.

79. Defendant caused Mr. Dias' phone to ring repeatedly and continuously in violation of M.C.L. § 445.252(n).

80. Defendant failed to implement procedures to prevent violation of the MCPA, in violation of M.C.L. § 445.252(q).

81. Mr. Dias is entitled to actual or statutory damages, whichever is greater, as a result of Defendant's violations of the MCPA. M.C.L. § 445.257(2)

82. Mr. Dias is entitled to treble damages for Defendant's willful violations of the MCPA M.C.L. § 445.257(2).

### COUNT V – Telephone Consumer Protection Act of 1991 – Individual Claim

83. Plaintiffs incorporate the preceding allegations by reference.

84. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, to the cellular telephone numbers of Plaintiffs using an ATDS and an artificial and/or prerecorded voice.

85. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiffs are entitled to an award of $500 in damages for each and every call to their cellular telephone

11

numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

**COUNT VI – Telephone Consumer Protection Act of 1991 - Individual Claim (Knowing and/or Willful Violations of the the TCPA**

86.     Plaintiffs incorporate the preceding allegations by reference.

87.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, to the cellular telephone numbers of Plaintiff using an ATDS and an artificial and/or prerecorded voice.

88.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiffs are entitled to an award of $1,500 in damages for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

**Demand for Jury Trial**

89.     Plaintiffs demand trial by jury in this action.

**Demand For Judgment for Relief**

90.     Accordingly, Plaintiffs, on their own behalf and on behalf of the members of the Classes, request judgment against Defendant as follows:

         A.     Certification of the proposed Class;

         C.     Appointment of Aaron Dias as representative of the FDCPA Class;

         E.     A declaration that Defendant's actions complained of herein violate the FDCPA;

12

G.      An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from making collection calls unless it identifies itself by its true name;

H.      An award to Plaintiffs and the Class of damages, as allowed by law;

I.      An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

J.      Leave to amend this Complaint to conform to the evidence presented at trial; and

K.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

Respectfully Submitted,


s/ Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Plaintiffs
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Julie@MichiganConsumerLaw.Com

Dated: July 14, 2015